IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


TIMOTHY THRO,
      Plaintiff,

vs.                             Case No.: 5:08cv120/RS/EMT

RICHARD BAGWELL,
Investigator, Bay County Sheriff's Office,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Timothy Thro ("Thro") proceeds pro se in this action brought pursuant to 42 U.S.C. § 1983.  He has paid the filing fee (Doc. 7).  This case has been referred to the undersigned magistrate judge for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B)(C).  Presently before this court is the motion for summary judgment filed by Defendant Richard Bagwell ("Bagwell") (Doc. 49, exhibits in support at Doc. 50).  Thro has filed a response in opposition to the motion (Doc. 55).  As explained below, this court recommends that Bagwell's motion for summary judgment be granted.

## I.    BACKGROUND

      Thro initiated this action by filing a civil rights complaint in 2008 (Doc. 1).  In the fourth amended complaint (Doc. 34), which is the operative pleading in this case, Thro names Bagwell as the sole Defendant.  Thro alleges that Bagwell obtained and directed the execution of a search warrant for premises in Southport, Florida, at which Thro rented an apartment from Henry Peterson ("Peterson") (*id.* at 3).[1]  According to Thro, although the warrant for the premises belonging to

---

[1]  The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned to their documents.

Peterson purportedly was authorized by then Bay County Circuit Judge Don T. Sirmons ("Judge Sirmons"), Judge Sirmons did not actually see or sign the warrant prior to its issuance (*id.*).  Rather, Thro alleges, Bagwell forged Judge Sirmons' signature on the warrant, which was executed on April 29, 2005, "then backdoored a full search warrant on May 6, 2005."[2]  Thro further asserts that the warrant application prepared by Bagwell contains inaccurate or incomplete information (*id.* at 4).  During the search of Thro's apartment, law enforcement officers discovered contraband; Thro was arrested on drug charges, to which he later pleaded no contest (*id.* at 6).  Thro claims that in violation of the Fourth Amendment he has been denied the right "to be free from unwarranted detainment," "to be free from illegal search and seizure and to be secure in one's home and his papers and personal effects," and "to be free to complain of such violations" (*id.* at 9).  He seeks as relief nominal, compensatory, and punitive damages (*id.*).[3]

Bagwell answered the fourth amended complaint and asserted several defenses, including the affirmative defense of qualified immunity and the existence of a procedural bar under Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) (Doc. 41).  Following a period of discovery, Bagwell filed the instant motion seeking summary judgment in his favor (Doc. 49).  The court issued an advisement order informing the parties of the importance and ramifications of summary judgment consideration and providing them with information as to the requirements for materials submitted for Rule 56 review (Doc. 51).  Thro has now filed a response in opposition to the motion for summary judgment, which includes his own statement in support (Doc. 55).[4]

---

[2]  Thro states that attached to the copy of the warrant presented to him at the time of the search were only a description of the premises to be searched [Exhibit A] and a statement identifying the items to be searched for and seized [Exhibit B].  No probable cause statement was included (Doc. 34. at 3).  Thro submits that he later obtained a complete copy of the application and affidavit for search warrant, which included Exhibits A and B, as well as the probable cause statement [Exhibit C] (*id.* at 4).

[3]  Although Thro includes in his prayer for relief a request for the "power of discovery," he makes no demand for actual injunctive or any declaratory relief.  Thus, the only relief Thro demands is monetary damages.

[4]  Thro's "Affidavit" in support of his response in opposition to the motion for summary judgment has not been notarized and thus is not acceptable as a sworn statement (Doc. 55).  Unsworn statements, even from pro se parties, should not be "consider[ed] in determining the propriety of summary judgment."  Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980).  Nevertheless, federal law provides an alternative to making a sworn statement.  Under this alternative, the statement must include a handwritten averment, signed and dated, that the statement is true under penalty of perjury.  *See* 28 U.S.C. § 1746.  Thro's "Affidavit," or declaration, adequately observes the formalities set forth in § 1746 (*see* Doc. 55 at 5).  The same is true of Thro's fourth amended complaint (*see* Doc. 34 at 9).  To be used as an opposing

II.     SUMMARY JUDGMENT STANDARD

        In order to prevail on a motion for summary judgment, the movant must show that the non-movant has no evidence to support his case or present affirmative evidence that the nonmovant will be unable to prove his case at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986).  If the defendant successfully negates an essential element of the plaintiff's case, the burden shifts to the plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Id.  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  A fact is "material" if it "might affect the outcome of the suit under the governing law."  Id.  The nonmovant must show more than the existence of a "metaphysical doubt" regarding the material facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  Speculation or conjecture from a party cannot create a genuine issue of material fact.  Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).  "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."  Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); see also Celotex Corp., 477 U.S. at 324.  The nonmovant must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  Celotex Corp., supra; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).  Conclusory,

---

affidavit at summary judgment, the declaration must also be based on personal knowledge and set forth specific, admissible facts. See Fed. R. Civ. P. 56(c)(4); Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986). Here, to the extent Thro's declaration and fourth amended complaint are based on personal knowledge and set forth specific facts admissible in evidence, as required by Rule 56(c)(4), the court considers the documents in its summary judgment review.

uncorroborated allegations by a nonmovant in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion.  *See* <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990).

Evidence presented by a party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to that party <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); <u>Jones v. Cannon</u>, 174 F.3d 1271, 1282 (11th Cir. 1999).  Moreover, where a party proceeds pro se, the court must construe his pro se filings liberally and hold him to a less stringent standard than applied to those represented by counsel.  <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1110 (11th Cir. 2006). Nonetheless, the party opposing summary judgment still bears the burden of coming forward with sufficient evidence of every element that he must prove.  <u>Celotex Corp.</u>, 477 U.S. at 317.  A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>Celotex Corp.</u>, 477 U.S. at 322.[5]

---

[5]  With regard to the factual positions asserted by the parties, the court applies the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> (1) Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also* Fed. R. Civ. P. 56(c)(4).  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if the movant's motion and supporting materials—including the facts considered undisputed—show that he is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2, 3).

III.     MATERIAL FACTS[6]

       Except as noted, Thro does not appear to dispute the following facts.  As a deputy sheriff with the Bay County Sheriff's Office assigned to work as an investigator with the Drug Task Force in Bay County, Florida, Bagwell learned in 2001 of Peterson's possible involvement in illegal drug activities (Doc. 50-3 at 1, affidavit of Bagwell).  Working with other law enforcement officers, Bagwell began an investigation of Peterson at that time (*id.*).  In April 2005, when Bagwell believed he had obtained enough information, he prepared search warrant applications for two properties owned by Peterson in Southport, Florida.  One of the properties was located at 7747 Calhoun Avenue, and the other was located on Nassau Street (*id.* at 2).

       At the time relevant to this action, Thro resided in and rented from Peterson an apartment at the 7747 Calhoun Avenue property (Doc. 55 at 3, declaration of Thro; Doc. 50-5 at 52, 54, deposition of Thro; Doc. 50-1 at 6–7, deposition of Peterson).  As of April 2005 both electric service and telephone service for the apartment had been in Thro's name for several years (Doc. 34 at 3).  Thro had no access to and did not use the garage portion of the structure in which his apartment was located; the garage area was used only by Peterson and/or his friends (Doc. 50-1 at 4, 8, deposition of Peterson).  In April 2005 Peterson used the 7747 Calhoun Avenue address as his mailing and legal address (although he then resided at his Nassau Street property), and he also claimed homestead exemption on the garage/apartment property (Doc. 50-1 at 3, 9, and 13, deposition of Peterson).[7]

---

[6]  The following material facts are drawn from the pleadings, depositions, and other evidentiary materials on file.  Although the court views such facts in the light most favorable to Thro as the nonmoving party, *see* Adickes, 398 U.S. at 157, it recognizes that what are stated as "facts" for purposes of summary judgment review may not be the actual facts.  *See* Montoute v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

[7]  In April 2005 Peterson  owned—in fact in 2011 still owns —a wood-frame house and a trailer adjacent to the garage/apartment (Doc. 50-1 at 8, 13, deposition of Peterson). Peterson testified that he has "lived there all [his] life" (*id.* at 5). According to Peterson, in April 2005 the address of the garage/apartment structure was 7747 Calhoun Avenue, and the correct address of the wood-frame house (which had no street numbers on it at the time) and trailer was 7737 Calhoun Avenue (*id.* at 13–14).  At the time at issue Peterson rented the trailer to tenants, and the wood-frame house was unoccupied (*see id.* at 3, 13).  The trailer used a street mailbox for mail delivery with the 7737 Calhoun address on it, but mail for the house was delivered to a mailbox with the 7747 Calhoun address (*id.* at 9, 13).  After 2005, the trailer burned down and, apparently, Peterson applied for homestead exemption for the combined properties; he now lives in the house on Calhoun Avenue and uses only the 7747 Calhoun Avenue address (*id.* at 3, 13, 22–3).

The Calhoun Avenue property is situated at the intersection of Calhoun Avenue and Second Street in Southport, Florida.  In April 2005, Thro and Peterson both took delivery of their mail in a mailbox with the numbers "7747" on it that was located on the east side of the property facing Calhoun Avenue (Doc. 50-5 at 62, deposition of Thro; Doc. 50-1 at 8–9, deposition of Peterson). The garage was accessible from the exterior through a door and a garage door that faced Calhoun Avenue (Doc. 50-1 at 8, deposition of Peterson; *see also* Doc. 34 at 3).  A solid wall separated the apartment and the garage areas of the structure, precluding interior access between the two spaces (Doc. 50-1 at 6, 7–8, deposition of Peterson; Doc. 34 at 3).  On the north side of the building, facing Second Street, was a door which opened into Thro's residence (Doc. 50-1 at 8, deposition of Peterson).  Above this door were affixed the numbers "7747"; there were no other street numbers on the garage/apartment structure (*see* Doc. 50-5 at 53, 55 and exh. 9, deposition of Thro; Doc. 50-1 at 8–9, deposition of Peterson).  There was also a door on the west side of the apartment which Thro ordinarily used for access (Doc. 50-1 at 8–9, deposition of Peterson).

Thro contends in his complaint that Bagwell forged Judge Sirmons' signature on the search warrant that was served April 29, 2005, at the 7747 Calhoun Avenue property.  According to Thro, the "S/" notation on the document preceding the judge's signature indicates that Judge Sirmons did not actually see or sign the warrant (Doc. 34 at 3).  Bagwell, however, maintains that he did present the search warrant application for 7747 Calhoun Avenue to Judge Sirmons, which Judge Sirmons signed on April 26, 2005 (Doc. 50-3 at 2 and Exhs. A–C, affidavit of Bagwell).  In support, in addition to his own affidavit, Bagwell offers the affidavit of Judge Sirmons, who avers that Bagwell properly swore the application for the Calhoun Street search warrant before him and completed it in compliance with applicable Florida law (Doc. 50-2 at 2, affidavit of Judge Sirmons).  In addition, Judge Sirmons avers that he signed the search warrants for the Nassau Street and Calhoun Avenue properties and issued the warrants, in duplicate, in compliance with Florida law (*id.* at 2–3).  Judge Sirmons states that his usual practice in issuing search warrants, which he followed in this instance, was to sign the original and initial each page; he used the notation "S/" immediately preceding his signature simply to identify the document as a duplicate (*id.*).

According to Bagwell, he and other Bay County Sheriff's Office law enforcement officers executed the authorized search warrants on April 29, 2005, at the Nassau Street and Calhoun Avenue

properties.  Bagwell personally participated only in the execution of the search warrant for the Nassau Street property (Doc. 50-3 at 3, affidavit of Bagwell).  Other law enforcement officers, including Bay County Deputy Sheriff Jamie Young ("Young"), executed the search warrant at the Calhoun Avenue property (Doc. 50-4, affidavit of Young).  At the Calhoun Avenue address, according to Thro, the officers first entered and searched the garage portion of the structure (Doc. 34 at 5).  In his affidavit, Young does not mention entering the garage (first or at all) but states that after knocking and receiving no response at the north-facing door to Thro's apartment—above which were the numbers "7747"—he and the other officers entered the residence, where they discovered Thro and proceeded to search the apartment (Doc. 50-4 at 2, affidavit of Young).  As Thro describes it, the officers kicked in the door to his apartment to gain entry, pointed their weapons at him, and handcuffed him before commencing their search (Doc. 34 at 5).

Bagwell and Young both aver in their affidavits (signed, respectively, March 23, 2011, and March 29, 2011) that Bagwell was not present at the 7747 Calhoun Avenue premises when the search was performed and that Bagwell played no role in the execution of the warrant for that address (Doc. 50-3 at 3, affidavit of Bagwell; Doc. 50-4 at 2, affidavit of Young).  More specifically, Bagwell states that, other than providing the persons who conducted the search with the warrant, he did not give them any instructions or directions with respect to the manner in which the warrant should be executed (Doc. 50-3 at 3, affidavit of Bagwell).  Bagwell further avers that prior to the search on April 29, 2005, he had no knowledge regarding the partitioning of the garage/apartment at 7747 Calhoun Avenue (Doc. 50-3 at 3, affidavit of Bagwell).  Based on his investigation prior to issuance of the warrant, he believed "the structure to be searched was a single building located at 7747 Calhoun Avenue and the entire structure was designated as that address" (*id.*).  Moreover, Bagwell contends that although he later came to learn that Thro resided on the premises at 7747 Calhoun Avenue, he had no knowledge of this information prior to the April 29, 2005, search (*id.*). Likewise, Young states that he had received no information prior to the search that identified Thro as a resident of the premises (Doc. 50-4 at 2, affidavit of Young).  At his deposition, which was given February 21, 2011, Thro acknowledged that Bagwell was not present during the search of the Calhoun Avenue premises and was not the person who executed the warrant (Doc. 50-5 at 73–4, deposition of Thro).  Thro also stated at deposition that he had "no idea" who was in charge of the

execution of the warrant at the Calhoun Avenue location (*id.* at 74).  In his declaration, however, which he signed on June 14, 2011, Thro submits that the investigators who searched his apartment entered it at Bagwell's direction and only after Bagwell had been made aware that the apartment could not be entered from the garage section of the building (Doc. 55 at 4, 5).  Thro further contends that Bagwell knew prior to the execution of the warrant that he lived in the separate apartment (*id.* at 5).  Also, according to Thro, the "officers conducting the search were in constant contact with their supervisor, Richard Bagwell, wherein it is assumed that the Defendant gave ongoing instructions" (*id.* at 3).

        In the course of searching Thro's apartment, law enforcement officers discovered a small quantity of marijuana and some drug paraphernalia belonging to Thro, whom Young then arrested (Doc. 50-4 at 2, affidavit of Young).  Thro was released from jail on his own recognizance on April 30, 2005 (Doc. 34 at 6).  On May 13, 2005, on the advice of counsel, Thro entered a plea of no contest to charges of possession of less than twenty grams of marijuana and possession of drug paraphernalia[8]; his plea was accepted, he was adjudicated guilty, and he was sentenced to a fine, which he has now paid in full (*id.* at 7).  Thro acknowledged in his deposition that in the criminal proceedings against him, he did not attempt to attack the search warrant for the premises located at 7747 Calhoun Avenue or to suppress the evidence seized from his apartment during the execution of that search warrant (Doc. 50-5 at 72–3, deposition of Thro).  Furthermore, Thro stated, he has not sought to "expunge" his conviction or otherwise challenge it (*id.*).

IV.   DISCUSSION

        As the court understands it, Thro's claim is that the search warrant obtained by Bagwell was invalid under the Fourth Amendment because Bagwell forged Judge Sirmons' signature on it; probable cause did not exist for the warrant's issuance; and the description of the place to be searched was insufficiently particular given that it encompassed the apartment in which Thro, who was not implicated in the investigation involving Peterson, resided.  Thro also appears to contend that the search of his apartment by Young and other law enforcement officers—at Bagwell's

---

        [8] Thro alleges in his complaint that he was charged with contraband that was found in Peterson's garage (Doc. 34 at 6).  Documents submitted with Thro's deposition, however, indicate that Thro was not charged with, and thus his plea of no contest did not address, this charge (*see* Doc. 50-5 at 72 and exhs. 12, 13, deposition of Thro).

direction—exceeded the scope of the warrant since they proceeded with the search despite knowing the garage used by Peterson and the apartment rented to Thro were two separate spaces.

As an initial matter, the court considers whether, as Bagwell suggests, Thro's § 1983 claim under the Fourth Amendment is precluded by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).  Section 1983 permits a plaintiff to obtain civil damages from any person acting under color of state law who deprives him of a constitutional right.  *See* 42 U.S.C. § 1983. In Heck, the Supreme Court held that a claim for damages under § 1983 is not cognizable where success on the claim would render the underlying conviction or sentence invalid.  Heck, 512 U.S. at 486–87.  Thus, unless the plaintiff can demonstrate that his conviction or sentence has been invalidated, his claim must be dismissed.  Heck, 512 U.S. at 487.  Heck does not, however, necessarily bar all Fourth Amendment claims for illegal search or arrest.  *See* Heck, 512 U.S. at 487 n.7; Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003).  In Hughes, the Eleventh Circuit noted that Heck only bars such Fourth Amendment claims which "if successful, would necessarily imply the invalidity of the conviction because they would negate an element of the offense." *Id.* at 1160 n.2.  In order to determine whether such a negation would occur, the reviewing court must consider both "the claims raised under § 1983" and "the specific offenses for which the § 1983 claimant was convicted." *Id.*

Here, Thro's convictions for possession of less than twenty grams of marijuana and possession of drug paraphernalia were premised on the marijuana and smoking device discovered during the search of his apartment under the allegedly improper warrant.  Accordingly, Thro's success on his claim that the warrant was invalid and the search was beyond the warrant's scope would cast doubt on the validity of an essential element of the offenses of which he has been adjudicated guilty.  Thro's allegations of an invalid basis for the issuance the search warrant and the warrant's unlawful execution thus amount to the kind of attack on the factual basis for a conviction that the Eleventh Circuit has deemed impermissible under Heck.  *See* Baxter v. Crawford, 233 Fed. App'x. 912, 916 (11th Cir. 2007) (per curiam) (barring under Heck a civil rights claim alleging illegal search and seizure for an individual convicted of cocaine distribution and possession, since such an action would attack the factual basis for his conviction).  Accordingly, because Thro has not successfully challenged his convictions on charges he possessed less than twenty grams of marijuana

and drug paraphernalia, Heck should preclude his instant § 1983 illegal search and seizure claim. Before concluding its Heck discussion, however, the court must address one final issue:  whether the favorable termination rule of Heck should apply to Thro as one convicted of an offense for which he was sentenced to a fine— now paid—and no prison or jail time.   It appears that Supreme Court decisions can be cited on both sides of this question.   *Compare, e.g.,* Heck, 512 U.S. at 490 n.10 (Scalia, J., writing the majority opinion) (stating that an action is barred even after plaintiff has completed service of sentence), and Spencer v. Kemna, 523 U.S. 1, 19, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998) (Souter, J., concurring for four justices) (stating that an action is not barred if plaintiff cannot seek relief from the conviction through habeas because he is not in custody), and *id.* at 25 (Stevens, J., dissenting) (agreeing with Justice Souter on this point).   Moreover, the Eleventh Circuit has not conclusively ruled on this issue.   *See*, *e.g.,* Abusaid v. Hillsborough County Board of County Commissioners, 405 F.3d 1298, 1316 n.9 (11th Cir. 2005) (noting in dicta that a majority of the Spencer Court had "expressed the view that § 1983 claims are barred only when the alternative remedy of habeas relief is available" but directing the district court to consider the issue first on remand); Christy v. Sheriff of Palm Beach County, Florida, 288 Fed. App'x 658 (11th Cir. 2008) (in decision in which plaintiff's § 1983 action was otherwise precluded by Heck, declining to consider assertion that § 1983 claim should be allowed to proceed because habeas relief was not available); Vickers v. Donahue, 137 Fed. App'x 285, 288–90 (11th Cir. 2005) (declining to address the issue of the unavailability of habeas relief where the plaintiff's § 1983 claim was barred under Heck because it would necessarily undermine his underlying conviction).   Following the position taken in Christy and Vickers, this court concludes that because Thro's § 1983 claim would necessarily undermine his conviction for possession of marijuana and paraphernalia, and thus is barred by Heck, it should decline to address the issue of the unavailability of habeas relief. Accordingly, the court is persuaded that Bagwell is entitled to summary judgment in his favor on Thro's Fourth Amendment claim under § 1983 on the ground Heck precludes the claim.

Even if Heck does not preclude Thro's Fourth Amendment claim, the court concludes that Bagwell nevertheless is entitled to summary judgment in his favor.   First, to the extent Thro sues

Bagwell in his official capacity,[9] Bagwell is entitled to immunity under the Eleventh Amendment, which is an absolute bar to suits for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); Edelman v. Jordan, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 1355–56, 39 L. Ed. 2d 662 (1974).  Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits a suit against a state in federal court.  Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).  Florida has not waived its Eleventh Amendment immunity from suit in federal court.  See Fla. Stat. § 768.28(17).  Furthermore, Congress did not intend to abrogate a state's Eleventh Amendment immunity in § 1983 damage suits.  Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490 (11th Cir. 1995).  Florida has not waived its sovereign immunity or consented to be sued in damage suits brought pursuant to § 1983.  See Gamble v. Fla. Dep't of Health & Rehabilitative Servs., 779 F.2d 1509, 1513 (11th Cir. 1986).

Additionally, sued in his individual capacity, Bagwell is entitled to qualified immunity.  This doctrine provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).  It is intended to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).  In order to find a defendant susceptible to suit, the court must answer two questions in the affirmative.  One, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L. Ed. 2d 272 (2001), modified by Pearson, supra (holding that courts need not address

---

[9]  As Thro does not state in his complaint whether he sues Bagwell in his individual capacity or his official capacity, the court addresses Thro's claim as if he sues Bagwell in both capacities.

Saucier's two prongs in sequential order).  Two, was that right "clearly established"?  Saucier, 533 U.S. at 201.  In other words, based on the facts alleged, "would [it have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted"?  Saucier, 533 U.S. at 202.

First, the court readily rejects Thro's contention the search warrant for 7747 Calhoun Avenue was invalid because Bagwell forged Judge Sirmons' signature on it (an assertion Thro makes in his complaint but does not reassert in his response to the motion for summary judgment).  The evidence—significantly, the affidavit of the individual most intimately involved in the event, Judge Sirmons (Doc. 50-2, affidavit of Judge Sirmons)—completely refutes Thro's assertion.  Thro has offered no evidence (or argument) in response to Judge Sirmons' statements that Bagwell properly presented the warrant application to him and he properly signed it.  Thus, based on the uncontroverted evidence, the court concludes that Thro has not shown that Bagwell committed any constitutional violation with respect to the signing of the search warrant for 7747 Calhoun Avenue on April 26, 2005.

Although his arguments are not well articulated, Thro additionally appears to contend that Bagwell's search warrant application was not supported by probable cause and  was not sufficiently particular in describing the place to be searched (*see* Doc. 55 at 4–5, declaration of Thro; *see also* Doc. 34 at 4–5).  According to Thro, Bagwell knew that Peterson rented the apartment to him (even noting in the search warrant affidavit the existence of an apartment in the structure) and knew that the apartment was physically distinct and inaccessible from the garage portion of the structure.  Moreover, the warrant application indicates that the garage contained booby traps, although none were found, and that the garage was used as a methamphetamine lab, although no evidence of this was discovered.  Also, Bagwell's investigation did not reveal any evidence that Thro was involved in Peterson's suspected illegal drug activities or that contraband would be found in Thro's apartment.

The court first considers whether, as the Fourth Amendment requires, probable cause supported the 7747 Calhoun Avenue search warrant.  U.S. Const. amend. IV (providing in part that "no Warrants shall issue, but upon probable cause . . . .").  In a qualified immunity case that turns on the presence or absence of probable cause, an official will be entitled to qualified immunity if either actual or arguable probable cause existed.  *See* Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir.

2002). "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence in a particular location." United States v. Brundidge, 170 F.3d 1350 (11th Cir. 1999). Arguable probable cause exists when "an officer could have believed that probable cause existed, in light of the information the officer possessed." Montoute, 114 F.3d at 184. Bagwell's statement in support of his application for a warrant to search 7747 Calhoun Avenue outlines in considerable detail the investigation into the alleged drug activities at Peterson's properties (*see* Doc. 50-3, exh. A, affidavit of Bagwell).[10] Based on the totality of the circumstances presented in Bagwell's affidavit, this court accepts that there was a fair probability of finding contraband on the premises of 7747 Calhoun Avenue. At the very least, there was arguable probable cause to support issuance of the warrant, based on the information disclosed by Bagwell. This conclusion is unaltered by the fact that the information in the affidavit may not have been entirely correct in that no booby traps were found on the premises and no methamphetamine lab was discovered. The same is true with respect to Thro's assertions that he had no known or suspected involvement in any of Peterson's alleged illegal drug activities and there was no reason to suspect contraband would be found in his possession. Indeed, it is clear that Thro was not the target of the investigation, and the evidence accepted by the court shows that neither Bagwell nor Young was even aware of Thro's tenancy on the 7747 Calhoun Avenue premises prior to April 29, 2005. It is true that a law enforcement officer "violates the

---

[10] The probable cause affidavit states that some information was provided by a confidential informant in 2001 and other information was received from an anonymous source in November 2004 (Doc. 50-3, exh. A at 9, affidavit of Bagwell). The information provided by these individuals apparently led to further investigation of Peterson commencing in November 2004. At that time, law enforcement personnel ran a check on Peterson's driver's license and reported address, and they conducted an extended physical surveillance of his properties, including his property at 7747 Calhoun Avenue. From November 2004 to April 2005, numerous samples obtained from trash cans at this location (some found with documents identifying the 7747 or 7737 Calhoun Avenue addresses or the Nassau Street address of Peterson and/or the tenants in his rented trailer) field-tested positive either for marijuana or methamphetamine (*id.* at 9–12). In addition, two other confidential informants provided substantiating information concerning Peterson's involvement in illicit drug activities (*id.* at 10–11). Law enforcement personnel ran a criminal history check on Peterson in April 2005, which showed a prior arrest for marijuana, and checks on Peterson's driver's license and vehicle ownership revealed reported addresses on Calhoun Street and Nassau Street, respectively (*id.* at 12). While the names of the tenants occupying the trailer were noted in the probable cause statement in connection with items found in trash extractions and a criminal history check (*id.* at 11, 12), nowhere in the affidavit is Thro mentioned by name.
    Also on the statement is a note handwritten by Bagwell in response to an inquiry by Judge Sirmons. It states that surveillance conducted at both the Nassau Street and Calhoun Avenue locations had revealed trash was placed out for disposal only at the Calhoun Avenue address, which was consistent with Peterson's owning both properties and subscribing to one trash service for both residences (Doc. 50-3 at 2 and 12, exh. A, affidavit of Bagwell).

Constitution if, in order to obtain a warrant, [he] perjures [him]self or testifies in reckless disregard of the truth." Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994). In this case, however, Thro has not presented any evidence that Bagwell perjured himself. Nor, even if some of the information in the probable cause statement may have been inaccurate or incomplete, has Thro shown that Bagwell offered testimony concerning illegal drug activities at 7747 Calhoun Avenue that was in reckless disregard of the truth. In sum, to the extent the instant case actually turns on the validity of the warrant for 7747 Calhoun Avenue, this court concludes that probable cause existed for its issuance. Thus, in this regard Thro has failed to show that Bagwell violated his constitutional rights.

The court next addresses Thro's apparent argument that the search warrant's description of the place to be searched was inadequate. The Fourth Amendment is clear that no warrants shall issue except those "particularly describing the place to be searched . . . ." U.S. Const. amend. IV; Maryland v. Garrison, 480 U.S. 79, 84, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987); United States v. Burke, 784 F.2d 1090, 1092 (11th Cir. 1986). "The manifest purpose of this particularity requirement was to prevent general searches." Garrison, 480 U.S. at 84. Generally, a search warrant satisfies the Fourth Amendment if it describes the premises in such a way that the executing officer may "with reasonable effort, ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503, 45 S. Ct. 414, 69 L. Ed. 757 (1925); Burke, 784 F.2d at 1092.

The assessment of Fourth Amendment challenges involving a target with multiple units, not all of which are described in the warrant, is highly fact-specific and may hinge on what the affiant knew at the time he sought the warrant. In Garrison, law enforcement officers obtained a warrant to search a third-floor apartment, believing there was only a single apartment on the third floor. Garrison, 480 U.S. at 80. There were, however, two apartments on the third floor. In executing the search warrant the officers searched the second apartment before discovering it was a separate dwelling. *Id.* The Supreme Court acknowledged that the search warrant's description of the place to be searched was broader than appropriate, then proceeded to address whether the warrant violated the Fourth Amendment's particularity requirement:

> Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor . . . , they would have been obligated to exclude respondent's apartment from the scope of the requested warrant. But we must judge the constitutionality of their conduct in light of the information available

to them at the time they acted . . . . The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate.

*Id.* at 85. The Court upheld the validity of the warrant, concluding that the search warrant affiant reasonably believed that there was only one apartment on the third floor. *Id.* at 86 n.10. Even though the affiant may have been able to ascertain that there was more than one apartment (because the building contained seven separate units), the Court concluded, based on the information known to the affiant, that the warrant was sufficient. There was evidence that the affiant had gone to the location and matched it with the description given to him by an informant; contacted the electric company and determined there was one subscriber on the third floor; and, by checking police records, verified that the subscriber's address and physical description matched the one provided by the informant. *Id.* In United States v. Ofshe, 817 F.2d 1508 (11th Cir. 1987), the Eleventh Circuit also considered the validity of a search warrant in a situation involving multiple units at the target location. In that case, the search warrant involved a single company located in a "multiple use commercial building." *Id.* at 1514. After the warrant had been executed, the agent discovered that the premises were subdivided into seven offices, six of which were used by the company named in the warrant. *Id.* The court determined that the warrant was valid, based on evidence that showed "there was a single, locked entrance to the premises . . . controlled by a single receptionist who answered the telephone for all the offices. The mail was also received centrally and distributed to each office." *Id.* "Thus, the agents reasonably believed at the time they first entered the premises that the office space belonged" to the target company named in the warrant. *Id.*

In the instant case, the Fourth Amendment's particularity requirement is implicated because the search warrant failed to account for the fact that there were multiple units at the target structure, *i.e.*, the garage portion of the structure used by Peterson and the separate apartment rented to Thro.[11]

---

[11] There is no question that the application adequately identified the correct address of the structure to be searched, as it notes numerous times that the address was 7747 Calhoun Avenue, Southport, Florida (Doc. 50-1 at 14, exh. A, affidavit of Bagwell), and the record otherwise reflects this to be the correct address of the structure.

Thro also asserts that the application states the main entrance to the garage was through the north-facing door, when in fact the primary entrance to this area of the structure was through an east-facing door. The court notes that the application in fact correctly identifies two available means of access into the structure, the east-facing garage door (into the garage) and the north-facing door (into the apartment); although the application is inaccurate in describing the north-facing door as the primary entrance into the structure, it correctly identified this door as having the street numbers "7747"

Thro's argument is that Bagwell in fact knew prior to issuance of the warrant that Thro lived in the apartment and that the apartment was separated by a wall from the garage portion of the structure. Bagwell avers, however, that based on his investigation prior to seeking the warrant he believed the structure was "a single building . . . located at 7747 Calhoun Avenue and the entire structure was designated as that address" and that he had no prior knowledge that the structure was partitioned (Doc. 50-3 at 3, affidavit of Bagwell).  Thro's allegation concerning Bagwell's prior actual knowledge of his tenancy and the interior configuration of the garage structure when applying for the warrant is speculative and uncorroborated.  Thro asserts that Bagwell had such actual knowledge but fails to provide any explanation, much less evidentiary support, for this assertion.  Given the conclusory and unsupported nature of Thro's contention, no jury question is created on this issue. *See* Earley, 907 F.2d at 1081.

Moreover, Thro has come forward with nothing to suggest that Bagwell did not have a reasonable belief that the structure to be searched was a single unit rather than one containing a separate apartment occupied by Thro or another tenant.  Rather, the evidence—in particular information presented in Bagwell's probable cause affidavit presented to Judge Sirmons—supports the contrary conclusion.  For example, the affidavit references by name the two tenants who rented Peterson's nearby trailer, while there is no reference that the investigation uncovered the presence of any other tenant residing at the 7737/7747 Calhoun Avenue premises, much less in a separate apartment at the 7747 Calhoun Avenue address.  Thro's assertion that he saw officers openly surveilling the property while he was working in his vegetable garden with co-workers (and thus, he presumably contends, they must have seen him and the others) (*see* Doc. 34 at 5), does not mean that the officers or Bagwell should therefore have known of or suspected Thro's tenancy at the apartment.  There is a vague reference in the application affidavit that the garage/apartment structure was under the care, custody, and control of Peterson "and a person or persons unknown" (Doc. 50-3 at 6, exh. A, affidavit of Bagwell), but no mention is made that the investigation uncovered that a tenant lived in the apartment nor is Thro identified.  Also, in his description of the premises to be

---

prominently displayed above it (*id.* at 6).  Moreover, the north-facing door in fact did provide access into the structure to be searched, albeit into the apartment only. The search warrant application therefore was not deficient, much less constitutionally deficient, with respect to its description of the means of accessing the structure to be searched.

searched, Bagwell states that the numbers "7747" were clearly displayed over the north-facing door leading into the apartment (*id.* at 14). The evidence shows there was nothing anywhere else on the exterior of the building that suggested two separate spaces, one of which was rented to a tenant, were inside. Additionally, based on the examination of state records and trash at Calhoun Avenue, Bagwell concluded that Peterson used this property as his legal and mailing address. There is no evidence that the investigation revealed the same for Thro or any other tenant who might have been residing in the apartment. Taken together, the evidence is sufficient to show that at the time he sought the warrant Bagwell reasonably believed, as he avers, that the structure was a single unit with the address 7747 Calhoun Avenue. Accordingly, although the application affidavit was broader than appropriate given the unacknowledged multiple units at 7747 Calhoun Avenue, this court concludes that the warrant was valid with respect to the Fourth Amendment's particularity requirement.[12] Thro's assertion that Bagwell violated his constitutional rights by failing to identify his separate apartment, and it exclude it from the search warrant application, therefore fails.[13]

Finally, Thro appears to contend that the law enforcement officers who conducted the search exceeded the scope of the warrant because they proceeded with the search even though they knew the apartment and the garage were two separate areas. First, the undisputed evidence—from Bagwell, Young, and even Thro—reflects that Bagwell was not physically present during the search of Thro's apartment. Thus, to the extent Thro seeks to assign liability to Bagwell for his direct, on-site involvement in this activity, it is clear that Bagwell engaged in no conduct concerning the scope of the search that might have violated Thro's constitutional rights. Nor is there any evidence that

---

[12] Thro does not appear to assert that the warrant did not describe with particularity the items to be seized, which the Fourth Amendment also requires. Nevertheless, the court concludes that the warrant was adequately particular in describing the items to be seized as it included, *inter alia*, controlled substances and paraphernalia (Doc. 50-3 at 7, exh. B, affidavit of Bagwell).

[13] The court has accepted as true that Thro maintained subscriptions to electric and telephone services in his name for 7747 Calhoun Avenue, in April 2005 and for several years earlier (*see* Doc. 34 at 3). Thus the court concludes there was information that might have suggested to an investigator that a tenant named Thro occupied the premises; this information, if confirmed, might also have raised questions concerning the interior configuration of the structure to be searched. This conclusion leads the court to consider whether Bagwell was obligated to discover, and thus disclose to Judge Sirmons, the information concerning Thro's utility subscriptions. The court concludes he was not. Given the information his investigation had already disclosed regarding Peterson's ownership and use of the property, discussed above, the court is satisfied that Bagwell was not required to further investigate in whose name the utility subscriptions might have been placed.

Bagwell supervised the search or directed it from afar, only Thro's surmise—first presented in his response to the motion for summary judgment—that Bagwell did so.  The evidence indicates that Bagwell took no part whatsoever in the search of 7747 Calhoun Avenue, even in a supervisory capacity.  Bagwell states that his only involvement in the search was supplying the warrant to the law enforcement officers who conducted the operation (Doc. 50-3 at 3).  Young's testimony is consistent (Doc. 50-4).  Even Thro, at his deposition, stated that he had "no idea" who was in charge of the execution of the warrant at the Calhoun Avenue location (Doc. 50-5 at 74).  Thro's conclusory statement in his declaration that Bagwell was in constant contact with the officers during the search at 7747 Calhoun Avenue and, "it is assumed" (Doc. 55 at 3), personally directed their activities is unsupported by any details concerning the basis of his knowledge, much less any evidence.  Accordingly, it is not sufficient to create a jury question.[14]  *See* Earley, 907 F.2d at 1081.

In any event, the court concludes that the extent of the search conducted by Young and the other officers did not exceed the scope of the warrant.  If a search exceeds the scope of terms of a warrant, any subsequent seizure is unconstitutional.  Horton v. California, 496 U.S. 128, 140, 110 S. Ct. 2301, 2310, 110 L. Ed. 2d 112 (1990).  A search may, however, be as extensive as reasonably necessary to locate the items described in the warrant, *see* United States v. Wuagneux, 683 F.2d 1343, 1352 (11th Cir. 1982), and it generally is "not limited by the possibility that separate acts of entry or opening may be required to complete the search."  United States v. Martinez, 949 F.2d 1117, 1120 (11th Cir. 1992), quoting United States v. Ross, 456 U.S. 798, 820–21 102 S. Ct. 2157, 2170–71, 72 L. Ed. 2d 572 (1982) (footnote omitted).  As discussed above, the warrant was supported by probable cause to search the structure at 7747 Calhoun Avenue, reasonably believed at the time to be a single unit, for contraband and paraphernalia.  Even if the officers first entered the garage portion of the structure and saw it was a self-contained unit, or they realized when they

---

[14]  Even if Bagwell somehow were deemed a supervisor of the Calhoun Avenue search, he would not be liable under § 1983 for the unconstitutional acts of his subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.*  Liability may occur when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  Here, Thro has shown neither.

entered the apartment that both the apartment and the garage areas were self-contained units, it was within the scope of the warrant for them to continue their search of the structure by searching the apartment.  Accordingly, Thro has failed to demonstrate the violation of a constitutional right in connection with his claim that the search of his apartment exceeded the scope of the warrant.


V.      CONCLUSION

Based on the foregoing, the court concludes Thro's Fourth Amendment claim for monetary damages is procedurally barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed.2d 383 (1994).  Even if the claim is not Heck-barred, Bagwell is entitled to summary judgment in his favor under the doctrines of sovereign immunity and qualified immunity.

It therefore is respectfully **RECOMMENDED**:

1.      That Bagwell's motion for summary judgment (Doc. 49) be **GRANTED**.

2.      That the clerk be directed to enter judgment in Bagwell's favor and close this case.

At Pensacola, Florida, this 9th day of August 2011.



/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**




**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**